## Bushart v. County of Fulton.

(Decided March 4, 1919.)

### Appeal from Fulton Circuit Court.

1. Eminent Domain—Taking Private Property for Public Use—Compensation.—Under the provisions of the Kentucky Constitution, Bill of Rights, section 13, forbidding the taking of private property for public use without the consent of the owner, "and without just compensation previously made to him," which inhibition section 242, Constitution, extends to the injuring or destroying of property as well as the taking thereof, a county court is without power to cause a public road to be opened upon the land of the owner without just compensation, paid him before the road is opened and before depriving him of the possession of the land for that purpose. And this is so, although the necessity for the road and its establishment may have been determined, and the amount of the damages due the owner by way of compensation for the taking of the land for the road fixed and directed to be paid, by the judgment of the county court in the manner prescribed by the statute on that subject.

2. Eminent Domain—Taking Private Property for Public Use—Compensation.—A judgment of the county court fixing the compensation of the landowner in such case and ordering it paid, is not a sufficient compliance with the requirements of the Constitution. It must be paid or a tender of it legally made to the owner, before his land can be taken for the road.

HESTER & HESTER for appellant.

DEE McNEEL for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

In this action, brought by the appellant, L. M. Bushart, against the appellee, County of Fulton, the former sought

to recover of the latter $850.00 damages for its alleged wrongful act in causing to be opened across his farm a public road thirty feet in width. Appellee filed a general demurrer to the petition which the circuit court sustained. Excepting to this ruling the appellant filed an amended petition, in which it was, in substance, alleged that the county court of Fulton county, on the petition of five resident landowners, filed for the opening of the road, appointed commissioners to report upon the matter and to assess the damages that would result to appellant therefrom, who reported in favor of the opening of the road and that they had assessed the damages due him at $180.00, which report was duly confirmed and an order entered of record establishing the road as reported and directing that it be opened; that it was thereafter opened as ordered; and that by another order then or later duly entered of record, an overseer was appointed to take charge of the road and a boundary of hands designated to maintain it. It was further alleged that the county court, by its judgment, allowed appellant the $180.00 damages assessed and reported in his favor by the commissioners for the appropriation of his land for the road and consequent damages, but that it caused the road to be opened without paying him the amount of such damages. Appellee insisted upon its demurrer to the petition as amended and the circuit court again sustained it, to which appellant excepted, and, following his refusal to plead further, the court dismissed the action, and in so doing awarded appellee its costs. Appellant complains of the judgment entered in conformity to the several rulings mentioned; hence this appeal.

A county is but a subdivision of the state, created by law to aid in securing good government and the welfare of the people within its boundaries; and the county court is an auxiliary to the same end. While that court has numerous powers they are, after all, limited by law to the performance of certain designated judicial and ministerial duties of a public or governmental nature. Among these are certain powers with respect to the public roads of the county, which were formerly exercised by the county court alone, but are now exercised by that court in part, and in part by the fiscal court of the county.

As, ordinarily, a county cannot be sued for a tort committed by persons assuming to act for it, and the indefinite allegations of the original petition in charging

the appropriation of appellant's land for the road by agents of Fulton county, failed to make it plain that the act was not legally authorized by the county through its constituted authorities, it did not state a cause of action against the county, therefore the action of the trial court in sustaining the demurrer to it was not error.

As it is alleged in the amended petition that the road in question was opened on the petition of five resident landowners, as was required by the statute in force before the enactment, in 1914, of the present law, we must assume that the county court had entire control of the matter and, therefore, jurisdiction to render the judgment. No objection is made by the petition as amended to the validity of the judgment establishing the road. The only complaint made therein is that the amount of damages it awarded appellant was not paid him before his land was taken for the road, or at all; and that the failure of appellee to so pay the same or cause it to be paid, rendered the judgment unenforcible and the taking of his land for the road a trespass. If this contention is sound, the demurrer to the petition as amended should have been overruled; and this question will next be considered and determined.

The people of Kentucky have so far adopted four constitutions, under which its existence as a sovereign state has successively been maintained; the present constitution being the fourth. In each of these instruments will be found a declaratory statement, styled in the third and fourth the "Bill of Rights," enumerating certain rights, denominated "inherent and inalienable," which are guaranteed to the people of the state. Two of these rights are thus set forth in one and the same clause: "No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." This clause, in identical language, appears in section 12 of the first and second Constitutions, section 14 of the third Constitution, and section 13 of the fourth or present Constitution. It is only so much of the section as relates to the taking of property that we are now dealing with.

The present Constitution also contains, not in its Bill of Rights, but under the title "general provisions," section 242, this further declaration respecting the property

rights of the citizen: "Municipal and other corporations, and individuals invested with the privilege of taking private property for publc use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured at the election of such corporation or individual, before such injury or destruction.  The general assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual made by commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall in all cases be determined by a jury according to the course of the common law."

It will at once be seen that this section introduces an element of compensation not included in section 13, Bill of Rights, which goes no further than to compel compensation to the citizen for the taking of his property, before such taking; whereas section 242 requires him to be compensated for any material injury to or the the destruction of his property, without an actual taking thereof.  In several cases we have held that a city or county is liable in damages to the owner of property abutting a street or highway, not only for the taking, but for injury to or the destruction of such property by the excavation of a street or cutting down of a county road. Pickerell v. City of Louisville, 125 Ky. 213; Barfield v. Gleason, 111 Ky. 491; R. & L. Turnpike Co. v. Madison County, 114 Ky. 351; Henderson v. City, 132 Ky. 390; Cassell v. Board of Council, 134 Ky. 103; Ewing v. City, 140 Ky. 726; Layman v. Beeler, 113 Ky. 221; Moore v. Lawrence, 143 Ky. 448.  We have also held in numerous cases that a railroad company is liable in damages in an action by the owner for injury to his abutting property by the construction and operation of the railroad; or by obstructing and diverting the flow of water causing it to flood and injure the property.  Stein v. C. & O. R. Co., 132 Ky. 322; C. & O. R. Co. v. Blankenship, 158 Ky 270; C. & O. R. Co. v. May, 157 Ky. 208.

It is manifest that section 242 does not conflict with section 13 of the Bill of Rights; for both sections require that the owner shall be compensated in money before his property is taken  It is only in case of injury to or destruction of the property unattended by an actual taking, that section 242 allows the compensation to be

paid or secured at the election of the corporation or individual before such injury or destruction is caused. But as we understand them neither section 242 nor section 13 permits the actual taking of the property without the payment or tender of the compensation fixed by the judgment in the condemnation proceedings, before taking possession of it. In other words, there is nothing in section 242 or any other provision of the present Constitution that changes the rule obtaining under the previous Constitutions which required the payment to the owners, in advance of the taking, the value of his land.

In Carrico, etc. v. Colvin, etc., 92 Ky. 342. we held that the owner of land condemned for a public road cannot be deprived of the possession until the value of the land has been paid to him, and that the judgment of the county court fixing the compensation and ordering it to be paid to him, is not equivalent to an actual payment and does not deprive the owner of the right to the possession. It appears from the opinion that the judgment of the county court confirmed the report of the viewers recommending the opening of the road, adopted the verdict of the jury assessing the damages to the appellant for the taking of his land, and entered judgment allowing appellant the damages so assessed and establishing the road.

On appeal to the circuit court the judgment of the county court was affirmed, but on the appeal to this court the judgment of the circuit court was reversed, in so far as it directed the taking possession of the appellant's land and opening of the road, previous to the payment of the damages awarded. In the opinion it is in part said:

"The question is, could the appellant's land be taken from his possession for public road purposes without its value having been previously paid to him? Section 14, article 13, of the old Constitution, under which this proceeding was had provided that no man's property should be taken or applied to public use without just compensation being previously made to him. This court, in the case of Covington Short Route Transfer Railway Co. v. Piel, 87 Ky. 267, decided that where property was condemned for the use of a railroad corporation it could not be taken from the possession and control of the owner and vested in the corporation without his being previously paid in money for the land. But it is said that this case is unlike that, because in this case the prop-

erty is taken for other purposes, and the pledge of the county, through its authorities, for its payment should be regarded as equivalent to an actual payment previous to the taking of the property, and Gashweller v. Mackelvoy, 1 Mar. 84, is relied upon as an authority sustaining that view. But the Covington Short Route Transfer case disapproves that case, and we, upon further reflection, concur in the disapproval. The provisions of the Constitution, *supra*, make no exception in favor of the state or its subdivisions so far as the compensation for the property taken is concerned. It was intended by this provision to allow, if necessary, private property to be taken for public use against the will of the owner, and to pay him for it according to the value put upon it by others if he and the taker did not agree on the value, etc., but to protect him as fully as possible in consequence of the exercise of this arbitrary power, it was provided that he should be compensated for the property previous to its being taken from him. Now a promise of compensation, however solemnly made, is not an actual compensation nor its equivalent. Is the judgment of the county court awarding the appellee the value of the land taken anything more than that the other shall pay the amount of the judgment? We think not. The other authorities may refuse to make the levy or payment, and the appellant would be compelled to resort to legal proceedings to enforce the judgment which might be by another court declared void, etc. So the judgment of the county court fixing the amount of compensation and ordering its payment is not an actual payment in money nor equivalent to such payment."

Kentucky Statutes, section 839, relating to the exercise of the right of eminent domain by railroad companies, requires the payment to the landowner by the railroad company of the compensation awarded him for the land by the judgment of the county court, before taking possession of it, but provides that if the railroad company would take an appeal from the judgment of the county court it must in order to entitle it to the possession of the land, in addition to executing an appeal bond, pay into court the damages assessed and all costs. To substantially the same effect is the law regarding the appropriation of land privately owned for a public road, as found in Ky. Stats., section 4302, except that by the latter section it is provided that after concluding the pro-

ceedings for acquiring the land for the road and ascer-taining the compensation, it shall be at the option of the county court to pay it or abandon the undertaking to establish the road. If, however, it decides to pay the compensation, the fiscal court of the county is required to include in its next levy an amount sufficient therefor. If the proposed road be one leading from a public road, the county court may refuse to undertake its establishment or abandon it, unless the petitioner for the road or some one for him, shall deposit with the court a sufficient sum to pay all damages and costs sustained by reason of the establishment of the road.

In Chicago, St. L. & N. O. R. R. Co. v. Sullivan, 24 R. 860, we had before us the question here at issue. The railroad company instituted in the Ballard county court the proceedings authorized by section 839 Ky. Stats. for condemning a strip of land belonging to Sullivan upon which to construct a roadbed. In the proceedings the county court allowed the latter $3,000.00 as the damages that would result to him from the taking of his land by the railroad company. By direction of the judgment the railroad company was permitted in taking an appeal to the circuit court to pay the amount of the damages awarded Sullivan to the clerk of the county court, instead of to Sullivan. Following payment of the damages to the clerk the railroad company prosecuted the appeal to the circuit court and attempted to take possession of the land, but was resisted by Sullivan. It thereupon instituted suit and obtained an injunction to restrain Sullivan from interfering with its right to take such possession. The injunction was dissolved by the circuit court, following which the railroad company entered a motion before the Hon. A. R. Burnham, then a judge of the Court of Appeals, to reinstate it. The whole court sat with Judge Burnham on the hearing of the motion, which he overruled, thereby refusing to reinstate the injunction, in which ruling the other judges concurred.

In support of the motion to reinstate the injunction it was argued that section 242, Constitution, is complied with by either paying the compensation to the owner for the land or securing it to be paid; and that the payment to the clerk of the county court of the damages awarded the landowner by the judgment of the court, as directed by its terms, was a proper method of securing the owner in its payment, which entitled the railroad company to

take possession of the land condemned for its road bed without awaiting the decision of the appeal pending in the circuit court. The court, however, found no merit in this contention and rejected it holding that the old rule prevailing under the previous Constitutions requiring the payment or tender of the money to the owner before taking possession of the land has not been changed by section 242 of the present Constitution and that the payment of the money to the clerk by the railroad company was not equivalent to a tender of the money to the owner of the land. In the opinion it is in part said: "This section (242) is not in conflict with section 13 of the Bill of Rights, where the property is actually taken. Both sections require that the private owner shall be compensated in money before such taking. Section 242 does provide that in case of injury or destruction of property unaccompanied by the actual taking, that the compensation may either be paid or secured at the election of the corporation or individual before such injury or destruction. But there is a manifest distinction between taking of property and its incidental injury or destruction. In the latter cases it is often impossible to determine in advance the extent of such injury; and in this state of case the law very properly provides that such damages may be secured until they are definitely ascertained. We are fortified in our view of this matter by the very elaborate discussion of section 242 of the constitutional convention, where its purpose and effect were discussed in detail by many of the most distinguished members of the convention, and an avowal was made by the chairman of the committee who reported the section, that the purpose was to make a distinction between the taking and injury of property, and that there was no purpose to change the law as declared in the cases cited, *supra* (Covington S. R. R. Transfer Co. v. Piel, 87 Ky. 267; Asher v. L. & N. R. R. Co., 87 Ky. 391; Carrico, etc. v. Colvin, 92 Ky. 342). Indeed to do so would produce an irreconcilable conflict between section 13 of the Bill of Rights and section 242. We are inclined to the opinion that it was the intention of the legislature, by the provisions authorizing the payment into court of the damages assessed, to provide an easy way to make a tender to the defendant, and that such payment into court was in reality a payment to the defendant; but as the statute is not perfectly clear on this point, and has not been construed by the Court of Ap-

peals, I feel constrained to adhere to the old rule, and require an actual tender in money before the company is entitled to the possession of the land. But I entertain no doubt, however, that upon the payment or tender to the defendant the railroad company is entitled to the immediate possession of the land condemned, as fully as if the title had been conveyed to it, even if the defendant elected to prosecute an appeal." . . .

In speaking of so much of section 839, Ky. Stats., as allows an appeal in condemnation proceedings the opinion further says: "Under this statute the railroad company can prosecute an appeal to the circuit court for the purpose of reducing the amount of damages awarded to the defendant notwithstanding the previous payments, and the defendant is also given the right of appeal notwithstanding he may have accepted the compensation awarded in the county court proceedings. I am aware that this is a change of the common law rule that a party who has recovered a judgment upon a claim which is indivisible, and collected it, cannot maintain an appeal against the objection of the judgment debtor upon the ground that he had not recovered enough. This rule has been abrogated in appeals to this court by the amendment of 1888 to section 757 of the Civil Code, and in my opinion the legislature intended also to change this rule in cases of this character, bonds being required to the end that the successful party in the trial *de novo* in the circuit court might be secured in the increase or decrease, as the case may be, of the judgment of the county court. It follows from these views that the payment by the railroad company to the county court clerk was not equivalent to tender of the money to the defendant, and until they have done so they are not entitled to take possession of the land in controversy."

The admirable reasons advanced by the writer of the opinion in support of its conclusions seem to us unanswerable; moreover, the opinion has since been followed and its conclusions approved in the case of Hamilton v. Maysville & Big Sandy R. R. Co., 27 R. 215, although with different results; for in the latter case it was held that as the owner of the land condemned for the use of the railroad company was present when the damages awarded and all costs were paid in court by the company and then, and following such deposit of it, announced in open court her refusal to accept it, such refusal obviated or

excused a formal tender of the amount due for the loss of the land and, under the circumstances, entitled the railroad company to the immediate possession of it. On this subject we said:

"As to the proposition of tender, it is sufficient to say that a tender in money is excused when the party to whom it should be made declares he will not accept it (Dorsey v. Barbee, Litt. Sel. Case 204). In the case at bar it appears without contradiction that appellant announced in open court she would not accept the money, and it would have been futile and unnecessary to do otherwise than to deposit the money with the court, as was done in this case."

In a yet more recent case, Beckham v. Slayden, 32 R. 944, it was held that a judgment in condemnation proceedings, fixing the compensation and ordering it paid, is not equivalent to an actual payment, so as to deprive the owner of his right of possession.

The principles and practice controlling a condemnation proceeding instituted by a railroad company except some differences as to the measure of damages, are equally applicable to the condemnation of land for a public road. Both counties and railroad companies are controlled by the same provisions of the constitution and substantially the same statutory regulations in the matter of being held to strict accountability for property taken, injured or destroyed by them.

All provisions of the Constitution on that subject are mandatory, and no statute will be upheld which can be so constructed as to impair their salutary meaning or effect. The obvious meaning of sections 13 and 242, Constitution, is not only that persons whose property is taken for public use (and it can be taken for no other) shall receive just compensation therefor, but that this compensation must be received by them or tendered them before the property is taken. This rule, as declared in the several cases we have cited, can no more be disregarded by the judgment of a court than by the act of a corporation or an individual.

According to the averments of the petition, appellant, though deprived by the judgment of the county court of a sufficiency of his land for a roadway, has not been paid its value or any part of the incidental damages thereby caused him.

This should have been done before depriving him of the possession of the land. While the judgment appears to have fixed the amount to which he was regarded by the court entitled, it failed to require its payment before depriving him of the land, and the appropriation of his land to the use of the public as roadway under the circumstances was a clear violation of the sections of the Constitution, *supra,* constituting a trespass for which the county of Fulton is liable in damages. Appellant might have taken an appeal from the judgment, or he might have obtained an injunction to prevent the opening of the road, but he was not bound to pursue either of these remedies. He also had the right to elect to sue for the trespass as he has done, and the judgment of the county court will not bar the action, if the averments of the petition are established by proof. He is not required to allege a failure of the county to tender payment of the damages due him. If there was such a tender made, that is a matter of defense which the county must set up by answer.

It is sufficient to allege, as he has done, that he was not paid the damages before the land was taken or at all.

For the reasons indicated the judgment of the circuit court is reversed and cause remanded with directions to overrule the demurrer to the petition and for further proceedings consistent with the opinion.

Whole court sitting.