**GULLEDGE et al. v. TEXAS GAS TRANS-MISSION CORP.**

Court of Appeals of Kentucky.
Oct. 31, 1952.

As Modified on Denial of Rehearing
March 27, 1953.

Hottell, Stephenson & Allen, Louisville, for appellants.

Peter, Heyburn & Marshall, Samuel R. Wells, Gavin H. Cochran, Louisville, for appellee.

CULLEN, Commissioner.

F. A. Gulledge and others, owners of a farm over which the Texas Gas Transmission Corporation condemned a right of way for a 26-inch gas pipe line, are dissatisfied with the award of damages made by a jury in the Jefferson Circuit Court, and have appealed from the judgment of the circuit court.

The condemnation proceedings were conducted under KRS 416.230 to 416.310, which represent a compilation of a 1948 Act relating specifically to condemnation for pipe lines. Under this statute, the proceedings are initiated by the filing of a petition by the condemnor in the county court, whereupon three commissioners are appointed to appraise the land and to make an award of damages. When the commissioners' report is filed, the landowner is summoned, and he is then permitted to litigate, in the county court, only the question of the right to condemn. If the county court finds that the right to condemn exists, judgment is entered confirming the report of the commissioners, and the condemnor then is entitled to take possession of the right of way upon paying the amount awarded by the commissioners. If the landowner is not satisfied with the commissioners' award, he may attack it only by an appeal to the cir-

cuit court, where a jury trial is held upon the question of damages. The landowner may also appeal on the question of the right to condemn, but this question is determined by the circuit judge, and does not go to the jury. The statute provides that "The appeal shall be tried de novo" in the circuit court.

In the instant case, the gas corporation took possession of the right of way and installed the pipe line, after paying into county court the amount of damages awarded by the commissioners. The landowners appealed to the circuit court, both on the question of damages and the question of the right to condemn. The circuit court first took up the question of the right to condemn, and adjudged that the right existed. Several months later a jury trial was held on the question of damages, and the jury returned an award of damages lower than that of the commissioners.

Upon the trial in the circuit court, the condemnor used, as a witness on its behalf, one of the commissioners who had made the original award of damages. Upon cross-examination, counsel for the landowners sought to bring out that the commissioners had been paid excessive fees by the gas corporation for their services as commissioners in appraising the appellants' land, and on the same day had appraised, for similar fees, other tracts being condemned by the gas corporation. The trial judge sustained objections to this line of questioning, and thereupon the commissioner's testimony on the question was taken in chambers by way of avowal. He testified that on the occasion of appraising the appellants' property the commissioners appraised 12 or 13 other tracts for the gas corporation, and the usual fee was $25 for each tract appraised. The appellants then sought to introduce the testimony of the other two commissioners, on the question of the number of tracts appraised and the fee for each tract, and upon objections being sustained their testimony also was taken by way of avowal. One said that the commissioners appraised several tracts for the gas corporation on the same day, and that he thought the fee was $25 per tract. The other said that he thought the commissioners appraised three tracts on the same day, and that the fee was either $25 or $50 per tract. Checks for the fees were mailed from the office of the attorney for the gas corporation.

In Tennessee Gas Transmission Co. v. Million, 314 Ky. 137, 234 S.W.2d 152, this court condemned severely the practice of paying compensation to commissioners in condemnation proceedings in excess of the fee set by law, and we said that we would not hesitate to grant relief to a party seeking reversal of a judgment entered in a case where his adversary had engaged in such practice. The opinion in the Million case indicates an impression that there was a statute fixing a fee of $1.50 for commissioners. We now find that there was no statute fixing the fees of condemnation commissioners at the time the Million case was decided or at the time the appraisal in the instant case was made. Subsequently, by a 1952 amendment to KRS 64.260, the legislature has fixed a maximum fee of $15 per day.

There having been no statutory fee fixed at the time the appraisal in the instant case was made, we think it was the duty of the condemnor, before paying the commissioners, to apply to the county court to fix a reasonable fee. The reasoning behind the Million opinion was that the fee should not depend upon the liberality of the condemnor, but upon a standard fixed by the processes of law. According to the testimony of one of the commissioners in this case, the commissioners each were paid $325 or $350 for a day's work, by checks from the office of the condemnor's attorney. This was too liberal according to any standard. It is the danger of the commissioners being influenced that we are concerned with.

As we pointed out in the Million case, a statute permitting the condemnor to take immediate possession upon paying the amount of damages awarded by commissioners appointed in an ex parte proceeding can be justified only on the theory that the commissioners' award constitutes just compensation. See Barker v. Lannert, 310 Ky. 843, 222 S.W.2d 659. If the commissioners are subjected to influences that

may affect the justness of their award, the landowners' substantial rights are prejudiced.

■ Although the Million case had not been handed down at the time the appraisal in the present case was made, and while we are convinced that the attorney for the gas corporation was acting in utmost good faith and in accordance with a common practice among attorneys in the community, nevertheless we think that the payment of the extremely liberal fees to the commissioners, without court approval, was potentially injurious to the rights of the landowner. We are unable to say that the commissioners actually were wrongfully influenced by the payment, but they could have been so influenced. Under these circumstances we think that the entire proceedings must be nullified, because if the commissioners were influenced to fix too low an award, the landowner was placed in the position of being compelled to hire an attorney, and appeal to the circuit court, in an effort to receive adequate compensation for the property that had been taken away from him. Merely to hold a new trial in the circuit court would not adequately correct the error. The gas corporation should be required to institute the proceedings anew in the county court. However, it does not appear that the objectionable practice could in any way have affected the determination of the question of the right to condemn, so there should be no occasion to litigate again the issue of whether the gas corporation has the right to condemn the land.

■ We also call attention to the fact that in the Million case this Court disapproved the practice of using in the circuit court, as witnesses on the question of valuation, the commissioners appointed in the county court, where the circumstances are such that the commissioners, on appointment, might anticipate employment as witnesses.

Other questions are raised on this appeal that merit disposition because they may arise in the event of a new trial in the circuit court.

The first question deals with the burden of proof on the question of damages in the circuit court. In the instant case, the court awarded the burden to the condemnor. In some types of condemnation cases, it has been held that the burden belongs to the condemnor. Commissioners of Sewerage of Louisville v. Reisert, 243 Ky. 494, 49 S.W.2d 324; Commonwealth Dept. of Highways v. Baldwin, 312 Ky. 782, 229 S.W.2d 744. In other types of condemnation cases it has been held that the landowner has the burden. Waller v. Lee County, 187 Ky. 848, 220 S.W. 1071.

■ We are of the opinion that in proceedings under KRS 416.230 to 416.310, where the landowner appeals, the burden of proof as concerns the issue of damages before the jury is upon the landowner. His land already has been taken by the condemnor, and the only question for the jury is the amount of damages. The landowner would be the defeated party if no evidence were given on either side, because the condemnor would have possession of the land at the price fixed by the commissioners. This differs from the type of case where possession cannot be obtained until after trial of the question of damages.

Another question concerns the admissibility of evidence as to depreciation in value growing out of fear, on the part of potential purchasers, of explosion of the gas line. The appellants sought to prove by a civil engineer that upon the basis of his knowledge and experience, a gas pipe line might explode. The court sustained an objection to this line of questioning. Appellants' counsel also asked the engineer whether there was, in the vicinity, "any substantial apprehension as to fear of explosion" of this kind of pipe line. An objection again was sustained. However, the witness was permitted to answer a question which asked whether, from an engineering standpoint, based on his knowledge, "a fear of future explosion would be reasonable or ill-defined as far as this pipe line is concerned." Witnesses for the gas corporation, who had purchased farms over which a gas pipe

line ran, were permitted to testify that the presence of the pipe line did not affect their willingness to purchase nor the price they paid for the farms.

In Kentucky Hydro-Electric Co. v. Woodard, 216 Ky. 618, 287 S.W. 985, and again in Tennessee Gas & Transmission Co. v. Jackman, 311 Ky. 507, 224 S.W. 2d 660, this Court indicated the basis upon which fears of explosion may be allowed to enter into the calculation of damages for depreciation in value. However, the question of the kind of testimony that may be employed to establish general fear founded on reason or experience was not considered.

It appears from the Woodard and Jackman cases that there must be established: (1) That there is a basis in reason and experience for a fear of explosion; (2) that such a fear enters into the calculations of a substantial number of persons who deal in the buying or selling of similar property; and (3) depreciation of market value because of the existence of such fear. We think it should be required that the three facts be established in the sequence in which we have enumerated them, and that unless there is proof of all three facts the jury should be instructed to disregard any evidence of the others. It must be remembered that, as stated in the Woodard case, the fear of explosion is not a separate element of damages, but is to be considered only as it is expressed as a reason by a witness or witnesses in support of an estimate of depreciated value.

We think that Fact No. 1 could be established by a witness, having knowledge of the explosion of gas transmission lines known by him to have characteristics generally similar to the one in question, testifying as to the fact of such explosions. Cincinnati Gas Transportation Co. v. Cartee, 149 Ky. 89, 147 S.W. 925. Fact No. 2 could be established by a witness shown to have knowledge of the existence of the fear among numerous persons of the designated class, testifying as to the state and range of such fear. Proof of Fact No. 3 should be made by a witness, properly qualified by knowledge of values, testifying as to depreciation in value of the particular land in question and assigning as a reason for the depreciated value a fear of explosion known by him to exist among potential purchasers.

Under the foregoing principles, testimony of individual persons as to their own feeling of fear would not be competent. By the same token, we think that, to rebut proof of the existence of a general fear and depreciation of value resulting therefrom, the condemnor may not introduce evidence of individual persons that they had no fear and that the presence of a pipe line did not affect the price they paid for their farms.

Upon another trial, the lower court will be guided by the foregoing principles in the admission of evidence concerning fear of explosion.

Another question concerns the admissibility of evidence as to the assessed value placed on the appellants' land by the county tax commissioner for the year 1948, prior to the time the appellants purchased the land. This evidence was incompetent and should not have been admitted. Louisville & N. R. Co. v. Vandiver, 238 Ky. 846, 38 S.W.2d 965.

Other questions raised by the appellants probably will not arise upon a second trial, and therefore will not be discussed here.

The judgment is reversed, with directions to enter a judgment setting aside the judgment of the county court in so far as it approves the report of the commissioners, and remanding the case to the county court for proceedings consistent with this opinion.

MOREMAN, J., not sitting.